Good morning. May it please the court. It's my privilege to be here on behalf of Stanley Jones, who's here in the courtroom with us today. Mr. Jones filed this lawsuit in Guilford County State Court to challenge his arrest for absconding from his probation. There was absolutely no factual basis for that charge. He had been in constant contact with the Georgia probation office where his probation had been transferred under the interstate compact provision. He filed that claim because he was told that was the reason he was arrested for absconding and not because of the payment issue. Mr. Defendant Holbrook then wrote a letter to the Superior Court judge asking for the absconder warrant to be withdrawn that they had been forced to get the warrant. Because they believed they could not reach him and believed he had been arrested. The defendants responded to that lawsuit by moving for summary judgment, a little bit unusual, and claiming that they had probable cause to believe that he had failed to pay the monetary terms of his probation. And Judge Osteen essentially agreed with them and that is why we are here. And there are three basic points about North Carolina law that Judge Osteen missed. This is essentially a black letter case. The first is that since at least 1988, North Carolina probation law has been clear. A probationer cannot violate his probation unless the term is in writing and given to the probationer. In this case, the record is undisputed that the form, this DCC 2, that is used to give the probationer written terms was never completed. It is blank in this record to this day. And third, under the case law, that oral notice, these communications between the interstate compact offices in North Carolina and Georgia cannot, as a matter of North Carolina law, put someone on notice that they have a term of their probation that they have to fulfill. It has to be in writing. Well, don't we have to answer the legal question first? You know, what is the standard that should have been applied? Suspicionless, reasonable suspicion, probable cause. Because I couldn't, as to a probationer, I couldn't find any circuit precedent or Supreme Court precedent saying it has to be reasonable suspicion. So don't we have to answer that question first? I think the way you answer that question is, yes, I don't know if you have to, the way I was going to present it wasn't first. But if you want to answer that first, I think that the court wrestled with that question first with whether it was a due process standard for an arrest or a Fourth Amendment and was satisfied that it was the Fourth Amendment. So if it is the Fourth Amendment, then reasonableness is a standard. The question is, what is reasonableness? And I think it's important to note that in Griffin and in Knight and in this court's case in Midget, the courts approved that the officers were acting pursuant to a valid regulation and therefore they could operate under a reasonable suspicion. But in this case, the officers acting outside the statute, they are acting in a way that they have no authority to act. They cannot arrest because the term was not put in writing. I'm sorry, perhaps you did answer Judge Floyd's question and I didn't understand it. So if you could help me. I also was unable to find case law specifically on reasonable, on what the standard was, which would seem to be a predicate for any conclusion that the law was clear. Is that not correct? Did you say that that's not correct? No, I think it's correct that there has to be a predicate. The law has to be clearly established, but I think it is clearly established. And I think there's a subtle. But then perhaps you can help me. Is there circuit precedent on point? Is the Supreme Court precedent on point? There is circuit and Supreme Court precedent on point that probationers are subject to the Fourth Amendment to a lesser standard of reasonable suspicion with regard to searches. And there's the Seventh Circuit decision that the judge Osteen cited that would apply that to the arrest. So I think that there's a subtle standard. You don't have to have a case on point for the law to be clear. And here the law was clear that the arrest was invalid because it didn't comport with state criminal law. And therefore, it is an unreasonable arrest per se whether or not there's a case specifically on point. Well, that would be true as to lack of written notice to it. But how about the absconding? Well, the absconding has the same problem. The reason they believed that they had a basis to charge him with absconding was that they had failed to go back through the ICOTS communication process to communicate with him. I mean, one of the factual errors in the defendant's argument to this court is they claim that they saw these Georgia communications and therefore had reason to believe that he had noticed that he should pay. But the absconding charge would be bizarre if they had seen those communications because they would have known that he'd just been in the probation office in Georgia. So it's the similar thing that they have not followed the valid regulations for monitoring a probationer with regard to both charges. Now, the absconder is that they didn't communicate as required through the ICOTS process because that's the way you stay in touch with someone. And then they come to believe that he's absconded because they don't have his phone number or his right address, but he's been in constant contact with Georgia probation. Is it your position that Mr. Jones did not know he owed the fine? No, not at all. Not at all. His position is that he understood the only thing that he had gotten in writing, and it wasn't from probation. It was from his lawyer after he was after he pled. He got the bill of costs and the bill of costs, which is in the joint appendix, has the due date of July 7th, 2012. Since he'd gotten nothing else, he'd understood in communications with his lawyer that he had to make payment by July 7th, 2012, to be released from probation. Judge Osteen got confused about that and said we were trying to claim they were modifying the terms of probation. Whether it was a modification or the original term, the payment plan, the trial court judge directed that they set up a payment plan, and they failed to do so and then arrested him for not meeting a term that had never been established. That was an illegal arrest under North Carolina law, and that is an unreasonable arrest by definition under the Fourth Amendment because it lacked any legal basis. It's as if you would charge someone with arrest someone for a criminal violation knowing that they could not satisfy an element of it at the time of the arrest. It would be a patently unlawful arrest, and that's the problem in this case. The legal standard on qualified immunity, the one question is whether the law is clearly established, but the other is this notion, and I think all the parties agree, that under Harlow, a person is shielded by immunity unless they violate some clearly established statutory or constitutional right. Here you have a clearly established statutory right which implicates the Fourth Amendment. Under Anderson, a reasonable officer understands he's violating the law. No reasonable probation officer in North Carolina would believe that he could arrest someone where the terms were not in writing, and no reasonable officer could believe in North Carolina would believe that oral notice, even if he had had these conversations in Georgia the way they depict them, those oral notices were insufficient as a matter of law. So if no reasonable officer would think he had the power to arrest, the officer is knowingly violating the law in his subject and is not entitled to qualified immunity. And for that reason, I think that we're, that's why I would argue that we're entitled to summary judgment on remand in this case, because it is clear that the arrest was illegal under either charge, and that they're not entitled to qualified immunity because no reasonable officer operating under the regulatory scheme in North Carolina would believe that he had the power to arrest someone when the terms were not in writing. The defendants, in response to these arguments, in response to sort of Judge Osteen's effort to sort of say this 15A, 1343C, doesn't apply to payment of monetary terms, come back and basically make this argument where they don't want you to consider the statute because the version we attached to our brief was dated 2012. We gave you the versions that were identical at the time in 2010 and at the time of his plea and at the time of his arrest. They don't want you to look at the DPS policy, which repeatedly tells them you've got to put this in writing, cites to SUGS, cites to SEEKS, and then they don't want you to consider those cases. They don't even cite to those three cases, cite to SUGS or SEEK or the Boone case. The irony, if I may, go ahead, Johanna, I'm sorry. But what are we to make of the fact that the Georgia Interstate Compact Office sent responses to the compact action request from North Carolina, advising that Jones had been instructed by his supervision officer to make payment and that he stated he was going to contact his lawyer about the amount owed? Right. What you make of that, Judge, is understand that under SUGS, a judge in open court, on the record, told this gentleman that he could not drive a car. And he drove six times, I think the case says. After being told by a judge in court that he could not drive, and they tried to violate him, and the North Carolina State Court said, unless that restriction was put in writing, it's not enforceable. That is the point. So even if the fine isn't enforceable? The fine is enforceable. The timing of the payment can only be enforced if a payment schedule is put in writing and given to the probationer. He never received that document, which under the regulation is mandatory. That's the issue there. And Judge Osteen thought there wasn't any. There's an irony in this case. Judge Osteen thought that there wasn't any case law in the state sort of addressing this issue and had Pullman Doctrine concerns about deciding whether, when it's delegated to the probation officer to set up the payment plan, whether that had to be in writing. But this Boone case. So you're saying that because this, you're saying that there's no deadline on his payment of the fine? It was July 7th, according to the bill of costs, which is the only written document he'd received. If they had the power to send him the DCC-2, he had signed it. He was willing to pay under terms that they set. But for whatever reasons, I think just overwhelmed by work, they never sent it to him. But what I was getting to a moment ago is that Judge Osteen had this Pullman concern that he couldn't declare what North Carolina law would be as to whether, when the payment issue is delegated by the trial court to probation, whether that has to be in writing.  The Boone decision in 2013 makes that very clear. Under facts that are all very identical. Here's the little quote. This is at page, sorry, page 372, Southeast 2nd, 714, Southeast 2nd, 372. At the time of the violation report, six months remained on his probation, just like here. The initial judgment had left the scheduling of the payment plan to the probation officers, just like here. And there was no evidence that the trial of a payment plan was ever put in place, so he was acquitted. You have to, under Boone, it's clear that when it's delegated to the probation office, they have to put it in writing if they want to use the power of arrest and claim a violation. And because the state law as to what is a legal arrest was so clearly established, they are not entitled to Fourth Amendment qualified immunity because the arrest was unreasonable. And I'll make one last point. It's interesting here, looking through these cases and preparing for this argument. In Griffin, the court noted that when a judicial warrant is issued, as it was in this case, that the probable cause standard has to apply. And that's at 483 U.S. 878. The Constitution prescribes that where the matter is of such a nature as to require a judicial warrant, it is also of such a nature as to require probable cause. So I think there, if you want express language, if they're going to issue a warrant to arrest a probationer under Griffin, where they're acting outside, they're acting not following the regulation, but acting outside of it, they have to have probable cause under Griffin. But even if the standard is reasonable suspicion, I think that I'm running out of time here. I thought I was misreading my thing. I thought I was zero. Even if the standard is reasonable suspicion under the facts of this case and under the administrative regulation, they did not have reasonable suspicion if they did not give him the terms in writing. Thank you. Thank you, counsel. Mr. Finarelli. May I please the court? Your Honors, my name is Joe Finarelli, Special Deputy Attorney General with the North Carolina Attorney General's Office. Examined under, at most, a reasonable suspicion standard, the conduct of the defendant probation officers, Ms. Chandrasewan and Mr. Holbrook, in issuing a warrant for plaintiff's arrest for failing to comply with the terms of his probation entitles them to qualified immunity from plaintiff's claims. Now, two of your honors asked Mr. Largesse, I think twice, what the standard is and whether it's important. The standard has not been clearly established for the arrest of probationers. You're right, Judge Floyd, there is no Fourth Circuit precedent, there is no Supreme Court precedent on this direct issue as to whether it is even the reasonable suspicion standard. How does that help you, though, in light of your opposing counsel's argument that the North Carolina statute, as interpreted by North Carolina courts, was clearly not followed? The North Carolina, well, I would take issue with two parts of that supposition, Your Honor. First, the North Carolina cases that Mr. Largesse is citing, Seek and Suggs in particular, address modification issues. He said in direct response to one of your questions, he's not arguing modification. He's arguing that it was never in writing in the first place, what the payment schedule should be. Then he's arguing Suggs and Seek definitively establish that the modification must be in writing. Those cases, simple as they are, say that modifications of conditions of probation, not just generally, modifications of the condition of probation must be in writing and furnished to the offender for them to be effective and support an arrest. In each of those cases, those were special conditions of probation. They are not the circumstances we have here, and they do not involve a modification. This does not involve a modification. What you have here is the probation officers and really it was the interstate compact office in Raleigh implementing a payment schedule, yes, 18 months late, but implementing a payment schedule with that certified action request. That was transmitted to Georgia with specific instructions in writing that he was to pay by the end of January in 2012. They received a response to that several days later. I think it was February the 9th those responses from Georgia were received. But the instruction was pay by the end of February. Here's the mailing address. Georgia did what it was required to do under the compact. It communicated that to the offender. Now, whether they communicated it in writing isn't clear, but it also is equally unclear then to Officers Holbrook and Trendrassouan,  and thus even when the law applies about a written condition, a written modification being furnished to the offender, that they were aware that Jones had not been provided that communication in writing in any event. The secondary aspect, the Boone case that counsel again brings up, that is inapposite for at least two reasons. First of all, Boone was not the law at the time any of these events occurred. Boone was a 2013 decision. It has been cited again by counsel as evidence of what North Carolina law is. It's not the standard what the North Carolina law is looking in hindsight for these particular officers. In 2012, when these actions were taken to issue the arrest warrant, Boone did not exist. It had not been decided. In addition, Boone is a case that addresses the evidence that must be presented at a probation revocation hearing to support a conclusion that an arrest was lawful. It does not establish whether it's not even a modification case. It doesn't reference 15A.13.43 at all in the opinion. It does have language that I think is helpful to the plaintiff in that it talks about there's no payment schedule that was provided. But the issue in Boone was, is there any evidence provided at a revocation hearing of a modification or of an establishment of a payment schedule that would support a violation? There wasn't at that hearing. And the court said in the absence of any evidence at all, the probation officer's conclusory statement that he's in arrears wasn't enough to support a violation, and they vacated the revocation of the offender's probation. So neither Suggs nor Seek nor Boone address the issues here of, is the law clearly established that what these officers did violated Mr. Jones' Fourth Amendment rights? Was the law clearly established that it should have been in the first instance in writing? The law does establish that the conditions of probation must be provided to the offender in writing, yes. And they were not as to when he should pay at a time that preceded his release? Well, I think there's reason for the officers to believe that. I'm not asking what they believe. I'm asking is it clear that it was not in writing as to when he should pay at a date prior to expiration of his probation? No, I don't think it is clear that he was never provided in writing. He was never provided the DCC 2 form. That's clear. Right. The DCC 2 form is. Was that required under North Carolina law? No. It was not. It is not. What is required under North Carolina law? North Carolina law requires a provision of the terms of the probation in writing. That may be the judgment. The law does not address the DCC 2 form. That is contained in the internal regulations of the Division of Public or the Department of Public Safety and their community correction section. It discusses providing a DCC 2 to an offender establishing the terms of the probation. But it is not the exclusive means of providing that in writing. What alternative means does it give? It doesn't give any means, but it does an alternative means. Well, what do you come up with? You said that doesn't mean that's the only way it can be done, but it doesn't provide another way other than writing, correct? The regulations do not provide another method other than the DCC 2 form. That is the expectation for the officers. Well, you're stuck with that. That's the only way to do it. You have to do it in writing. And it was not done initially, correct? It was not done initially. That is correct. All right. So now an audit occurs and they say, well, this person, whether they're violating or not, wouldn't it be incumbent upon the officers to make sure that has been done at some point in writing? No. I don't believe that it is for these officers. The interstate compact process, I think, complicates the manner in which this arrest warrant was prepared. Under the interstate compact and under the regulations even in the North Carolina probation manual, the interstate compact coordinator, who is not Holbrook or Chandrasewant, is responsible for supervising the payment obligations and any violations of probation for offenders sent out of state, in this case to Georgia, for probation. Not creating the obligation but monitoring the regulation of it being complied with, correct? Correct. Okay, but they don't create it. They just monitor to make sure. No. Well, they don't create the obligation. The obligation was created by the state court when they said the probation officer can establish a schedule. Admittedly, that did not happen. Our argument is that that happened at least in late January when Mr. Waller sent the certified action request to Georgia, advising them to advise Mr. Jones he needed to pay. Here are the payment terms. You don't know whether that was in writing or not. No, I don't. Isn't that your burden? You're going to use the process of the court to arrest someone. You pull them out of the population. He's working. He's doing those things that I think you want probationers to do, and you pull him out and arrest him, and you don't think it's your burden to make sure it's been done in writing? If we were discussing the burden of upholding the validity of the arrest and on a subsequent revocation hearing, yes, I would agree with Your Honor. That would be our obligation as the state to show that that had been undertaken. What we've got is a qualified immunity standard of what these officers knew and when they knew it about what had been provided, what violations they had been told and been given indications from their superiors in Raleigh in the interstate compact office about the violation by Mr. Jones or the believed violations by Mr. Jones of his terms. Now, the officers, Chandrasekhar and Holbrook, are two steps down the line from the – Your Honor, you appear to have a question. No, I was – as I understood it, and I think you were getting to it, they were given to understand by – because they're in North Carolina and they're communicating with their counterparts in Georgia, they were given to understand that the supervision officers in Georgia had communicated with Mr. Jones, that Mr. Jones had been instructed to make the payment, the address, and that Mr. Jones had stated that he would pay off the balance of the fine. So I think – and I think you were getting to it, at least as I read these rather odd facts, they would not necessarily have known about a glitch on the other end of the process in Georgia. If there was a glitch, yes. But they would not have known beyond what's on the face of those documents. Is there any other document other than the DCC2? As far as setting a payment schedule? Other than the certified action request, if that is considered to be a writing setting forth the terms, albeit, again, 18 months late, then I think there are payment terms. Either way, the initial determination of a violation was made by officials in Raleigh. Ms. Chandrasewan and Mr. Holbrook are located in Guilford County, North Carolina. It's about 80, 90 miles from Raleigh. The impact – I'm sorry, the interstate compact coordinator is the one who, under the compact and under DCC regulations, identified what he believed to be a violation of the payment terms. He prepares an internal violation report, passes it down the chain to, after confirming that the payment had not been made, in accordance with the instructions he had given Georgia to give to Jones, and after confirming from – after receiving word from Georgia that the instructions had been conveyed, whether or not in writing it isn't clear, but he initiates the violation report down the chain to – ultimately to Ms. Chandrasewan. She prepares the violation report and is instructed to follow up. She follows up, attempts to do so, and I think there's some confusion with Mr. Largeson what the interstate compact regulations require, and this goes to the absconding point, Judge Floyd, that you had addressed. Her efforts are not in violation of the interstate compact terms. The interstate compact rule that Mr. Largeson has cited in his brief is – I think it's 4-1.08. 4.108 says formal communications must be between compact offices. It also says that violation reports and other documents must be transmitted through the interstate compact as well. These aren't – her attempts to contact Mr. Jones, unsuccessful as they may be, were not in violation of those terms. They are not formal documents that were being sent for purposes of supervising the offender. This was North Carolina's responsibility under statute and under the interstate compact to administer the payment obligation. The fact that she sent him a letter and attempted to communicate with him by telephone at the information that they had on file was an effort to avoid the violation report that she ultimately filed six weeks after the Georgia officials had told North Carolina officials that Jones had been informed of his obligations and had said he would pay by the end of February. So you've got a late January demand for payment. You have an early February acknowledgement that those instructions were provided and an apparent acknowledgement and agreement from Jones that those payments would be provided. Six weeks later, then, only then, is Ms. Chandrasewan filing a violation report based on the payment conditions. It just so happened the same day that she filed the violation report for the payment conditions, the letter that she had sent to Mr. Jones at the improper address that he had moved from in Georgia is returned. So she talks to Mr. Holbrook, her supervisor, and confirms that, yes, this satisfies the absconding provision because she had been unable to contact him. The last information they had received was six weeks ago. He had been contacting, he had been in touch with his probation officer in February. There is no requirement under the interstate compact regulations that she have communicated, or that she have never communicated or attempted to communicate with Jones directly. As a result, the absconder warrant is not in violation either. While it turns out that he was not, he had not absconded, and they withdrew those charges after he had paid the amount and so withdrew the violation report on the basis of the nonpayment, at the time they are taking these actions, it appears to these officers that, based on the information available to them, they have received direction from their superiors that a violation of the payment conditions has occurred. If you want to fault them for not going back to confirm, as the plaintiffs apparently would have you do, for confirming that there was a DCC 2 form in the file before initiating the arrest warrant, so be it. But our position is that they had reasonable suspicion, based on the facts available to them, as provided by the interstate compact office in North Carolina, that there was a sufficient basis to issue an arrest warrant, both for the nonpayment and for the absconding provision. What about the transfer application that a company that was made pursuant to the compact? What does that include? Did that include the amount or did Jones in that just agree to comply with the terms and conditions of supervision? The transfer application, I do not believe, included the amount. It does contain a provision, if I'm not mistaken, that he abide by the terms and conditions of probation. Those, of course, were set on the judgment that was established. There's a provision in the interstate compact that materials are supposed to be forwarded to Georgia for purposes of supervision, and that it's incumbent on the Georgia officials to communicate the terms of the probation that they are supervising him under. The judge in North Carolina did impose a few special conditions of probation that North Carolina would not have any reason or ability to monitor as the sending state under the compact. There's one final point that I think I would like to address, and that is Mr. Largest argued that his client stood ready to make a payment as soon as someone told him that one was necessary. And he says so in his affidavit to the district court in a number of places. If only somebody had told me in writing that I owed this money, I would have done something. Or if somebody had called me at my proper number, I would have done something. I would have immediately contacted North Carolina. And I think there's some disingenuousness to those statements in that I think Judge Duncan, it was you who pointed it out, when he was told by the Georgia officials, whether in writing or in person, you have an obligation to pay. North Carolina expects payment by the end of January, in fact. His response was he calls his lawyer and he relies on his lawyer's advice, that he didn't owe the money until July the 7th. Now, whether that's the lawyer's correct interpretation or an appropriate interpretation is irrelevant because he didn't take any steps to confirm with North Carolina, why are you asking for my money? I'm not due until July the 7th. There's no written payment schedule. Send it to me and I'll pay it. He did nothing. He contacted his lawyer and then he went back to the supervision of probation. And Georgia's concerns at that point don't have anything to do with the financial obligations. Georgia's concerns under the compact are supervision of the terms of the probation, not the financial violation or financial obligation that he owed to the state of North Carolina. So based on the facts that were before the district court, there was sufficient basis to conclude that these probation officers had reasonable suspicion to issue a warrant for arrest for both the absconding provision and the nonpayment provision. And therefore, they were entitled to qualified immunity for that they did not violate Mr. Jones' constitutional right. And even if they did, the law was not so clearly established at the time that they knowingly or plainly incompetently violated the law and his rights. So you say, if I understand your argument, that these two officers can rely on what Waller told them, what the compact people in Georgia told them, that's enough to get to reasonable suspicion? That is my argument, yes, Your Honor. Thank you. All right. So I guess you have some time, sir. Judge Duncan, you think the facts are odd. Let me make them odder than what you just answered. The violation report in this case was issued by Mr. Waller on February 4th. Mr. Jones did not meet with the Georgia compact officer until February 9th. They can't say that Waller relied on the response. He issued the violation based on the fact that he was in arrears alone. He asked Mr. Holbrook to confirm that he was in arrears, and Mr. Holbrook did, and he issued the report without regard to what Georgia had done. That's right. I saw the facts there, too. I was interested. Maybe it seemed to have changed. But, yeah, it was before they found anything about what Georgia had done. Go ahead. Second, if you look at appendix page 38 to our opening brief, this is chapter G, section 300 of the North Carolina Department of Public Safety manual here. It was Mr. Holbrook's obligation back in 2010 when this case was transferred to Georgia to make sure a signed DC-2 was in the file. It is subsection P-2A. Now, help me, but my recollection was that it was signed. The problem was that it didn't have the amount. It doesn't have what we're talking about here. There's no dispute that Mr. Jones knew he owed this money. Right. And it really, as I recall, am I incorrect that he signed the DC-2? He signed it. He didn't remember doing it, but he did sign it. He doesn't contest that now. His signature's on it. Right. So, but what the debate is about is the schedule. Right. Yeah. Which has to be. I just wanted to clarify. So it's a blank. Excuse me. It seemed to me that you were suggesting that there was no signed DCC. No, no. Which is, I just wanted to make sure we were on the same page. We are. I think the confusion there was that when we originally filed our documents in the district court, it was actually almost a year before they filed the DC-2 in response to our motion to amend the pleading. That was the first time we saw it. He just didn't remember signing it. He signed a bunch of papers one day. Yeah. But he had never gotten the form with the schedule. That's the point. He never had. He. Well, as a practical matter, he's about to get off probation. He owes 400 and something dollars. Right. Probation people always want to collect their money. So what difference does it make as to whether or not it was a payment schedule or a demand for payment in full? Because North Carolina law says you can't arrest him for violating probation unless you have set it up in a very specific way. It's an element of the criminal law in North Carolina. That's why. You sort of say, well, what's the difference? The difference is he was arrested in his home in front of his children, lost his job. I understand. Lost his home. The question is the schedule six months out from the time it's going to be terminated, probation's going to be terminated, why can't the probation people make a request for payment in full at that point? They can if they put it in writing and send it to him and have him sign it and return it. That's what the law requires. That would be the probation. That would happen from North Carolina. North Carolina could send the form. And that's what you're supposed to do. You send the form through ICOTS. That's the regulation he was referring to. It's a page. Sorry, I have it here. It's page 100 of the joint appendix. It is all notices violation. All those kinds of things have to be communicated through the interstate compact. Exactly. And they weren't. The form was not sent. If they had sent a form to him to sign and return, then he would have been on legal notice to pay. And he would have paid. It's not proper. He was on legal notice that he owed money. He did. And he understood. He may not have been on legal notice. And this is sort of the practical implication of Judge Floyd's question. He knew he owed the money. And he knew his probation was ending. He knew he owed it sometime. He knew in February that he had to pay by July. And he told the probation office. There's a factual dispute in this case about what their communication was in Georgia. His recollection of the conversation was simply to say, I know I have to pay. I'll make arrangements through my lawyer. And he contacted his lawyer. That's what the record in this case would show if we develop it. But what you're getting at is kind of this gut level thing of what's wrong. But it's a matter of North Carolina law. And ironically, Suggs and Seek now are appended in Westlaw and Lexis. But they have been distinct. These holdings that the statute means what it says have been amended, modified by Judge Osteen. It says that these cases are distinguished by this holding in this case, which suggests that you don't have to have things in writing, which is contrary. Here's what the statute is. A defendant released on probation must be given a written statement explicitly setting forth the conditions of which he's being released. And any modification must also be in writing. And what is the modification? You're saying that whether it's a modification or the original term. You're saying that imposing a payment plan on the existing fine is a modification? No. I'm not sure whether it would be considered a modification or the original payment plan. It doesn't matter because whether it's one or the other, it still has to be treated the exact same way, which is use the form that they created in response to this legal mandate and put someone in written notice of what they have to do and when they have to do it by. And the court said in 1988, if we will allow written or oral modifications and ignore what the statute requires, it would render the statute negatory. That's the legal question in this case. It may be practical and understandable at one level he's got to pay, but the law is clear on what they were required to do. And you were right, Judge. He was doing everything that they expected of a probationer. And that's sort of the tragedy of this case. He was doing everything. Except pay his fine. But it wasn't due yet. There's two parts of it. The first part is undisputed. He owed a debt. It's like saying you buy a refrigerator on time. You're supposed to make monthly payments. And if you don't make the monthly payments, they take it away from you. But they tell you you need to pay $1,000 at least by 365 days from now. You're not in violation if it's only 200 days past. That's the issue. The question is the condition is not paying when you're supposed to pay, not whether you owe the money or not. Yes, he owes the money. That's the question. All right, go ahead. I think you're finished. Anything further? All right. Thank you very much. We'll come down and greet counsel and proceed to the next case.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd